IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MINT SOLAR, LLC, a Utah limited liability company, and KNIGHT WEST CONSTRUCTION, INC., a Utah corporation,<br><br>Plaintiffs,<br><br>v.<br><br>BART SAVAGE, an individual, AARON HALDERMAN, an individual, OLIVIA BLACK, an indivdual, PRIZM ENERGY LLC, a Utah limited liability company, PRIZM ENTERPRISES, LLC, a Utah limited liabilty company, PRIZM HOME LLC, a Utah limited liability company, and DOES 1-10,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br><br>Case Number 2:18-CV-569 TS-PMW<br><br>District Judge Ted Stewart |
| BART J. SAVAGE, an individual, AARON HALDERMAN, an individual, OLIVIA BLACK, an individual, PRIZM ENERGY, LLC a Utah limited liability company,<br><br>Cross-Complainants,<br><br>v.<br><br>SCOTT SHUMWAY, an individual; SPENCER SHUMWAY, an individual; SIMON KEOGH, an individual; COLTON CHESTNUT, an individual; BYRON SMITH, an individual; BLAINE THATCHER, an individual; BRENDAN HAYS, an individual; TOMAS REYES, an individual; KNIGHT WEST CONSTRUCTION, INC., a Utah Corporation; MINT ENERGY, LLC, a Utah limited liability company; and MNT HOLDINGS, INC., nominally, and ROES 1-100.<br><br>Cross-Defendants. | |

This matter is before the Court on Defendants' Motion to Dismiss. For the reasons discussed below, the Court will grant the Motion in part and deny it in part.

I. BACKGROUND

The following allegations are taken from Plaintiffs' Complaint and are accepted as true for purposes of this Motion.

Plaintiff Mint Solar, LLC ("Mint") sells home power systems via direct sales. Mint is a party to a Demonstration Agreement with Sam's Club. Under that Agreement, Mint markets its products and services in Sam's Club stores nationwide.

Plaintiff Knight West Construction Inc. ("Knight") is a party to a General Merchandise Supplier Agreement with Sam's Club. Pursuant to that agreement, Knight sells home solar power system-related products to Sam's Club. Mint and Knight work together in connection with the sale of home solar systems in Sam's Club locations.

Knight hired Defendant Bart J. Savage ("Savage") on July 16, 2017. Savage later transitioned to Mint and became its chief sales officer. Knight also hired Defendant Aaron Halderman ("Halderman") on July 16, 2017, to serve as president of sales operations. Knight hired Defendant Olivia Black ("Black") as an accountant.

Without Plaintiffs' knowledge, Savage and Halderman formed Prizm Energy LLC, Prizm Enterprises LLC, and Prizm Home LLC (collectively, the "Prizm Entities"). Plaintiffs allege that Defendants developed and executed a plan to divert Plaintiffs' confidential customer information, their sales representatives, customers, and business to Defendants. Plaintiffs allege that Defendants took a number of steps to accomplish this goal, including: making false claims to Plaintiffs' sales representatives that they had not been completely paid; instructing sales representatives to refrain from entering customer lead information into Plaintiffs' database and,

instead, to pass customer contact and lead information to Prizm Energy for fulfillment; creating a website incorporating Mint's imagery to create the false impression that Prizm Energy was related to, or an outgrowth of, Mint; manipulating Mint's payroll system; purporting to transition Mint's sales team from Mint to Prizm; and falsely representing to Mint's sales representatives that it was Prizm, not Mint, that possessed the Demonstration Agreement with Sam's Club.

Plaintiffs allege that because of Defendants' conduct, numerous Mint sales representatives have left Mint to work for the Prizm Entities. Plaintiffs further allege that the Prizm Entities have taken over certain customer leads and fulfilled them, which has resulted in Mint losing access to confidential, proprietary sales information. Plaintiffs allege that Defendants' actions have caused devastating harm to Plaintiffs.

## II. STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[1] Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[2] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[3] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[4]

---

[1] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[5] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[6]

In considering a motion to dismiss, a district court not only considers the complaint, "but also the attached exhibits,"[7] and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[8] The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[9]

## III. DISCUSSION

A. REQUEST FOR JUDICIAL NOTICE

Before reaching the merits of Defendants' arguments, the Court must first consider their request for judicial notice. Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

---

[5] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[6] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

[7] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[8] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[9] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Defendants request the Court take judicial notice of three items: their Cross-Complaint,[10] the Declaration of Aaron Halderman,[11] and certain documents.[12] As to the Cross-Complaint, the Court can take judicial notice of its own files, which includes the Cross-Complaint.[13] "However, '[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein.'"[14]

Here, Defendant requests the Court disregard the allegations made in Plaintiffs' Complaint and instead accept the truthfulness of their own allegations. Such a practice is not permitted by Rule 201 and flies in the face of the standard of review under Rule 12(b)(6). Therefore, the Court will not take judicial notice of the allegations contained in Defendants' Cross-Complaint.

The request for judicial notice of the contents of Mr. Halderman's declaration suffers from the same flaws. Defendants seek to use Mr. Halderman's declaration to prove the truthfulness of the statements contained therein. As a result, it is not subject to judicial notice.[15]

Finally, Defendants request the Court take judicial notice of certain documents. Defendants submit a document entitled "Alexander Thomas Group & Mint Solar Sam's Club Residential Solar Program." The document is largely illegible and, even if the Court could take judicial notice of its contents, it adds nothing to Defendants' Motion.

---

[10] Docket No. 5.

[11] Docket No. 16-1.

[12] Docket No. 16-2.

[13] *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it.").

[14] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quoting *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

[15] *See Mrs. Fields Franchising, LLC v. MFGPC*, 721 F. App'x 755, 759 (10th Cir. 2018).

Defendants next provide a series of text messages, emails, and unexecuted contracts. Judicial notice is only appropriate if "the matter [is] beyond reasonable controversy."[16] The contents of these documents are not beyond reasonable controversy and, indeed, relate to the key issues in dispute. Therefore, the Court will not take judicial notice of these documents.

In sum, the Court will not take judicial notice of any of the documents submitted by Defendants and declines to convert the Motion into one for summary judgment. Therefore, the Court will evaluate Plaintiffs' claims based on the allegations contained in their Complaint.

B.  BREACH OF CONTRACT

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[17]

Plaintiffs allege that Knight entered into employment agreements with Halderman and Black and that Mint was a party to an employment agreement with Savage. Under these agreements, Plaintiffs retained these Defendants to perform certain roles. Plaintiffs allege that an implied term of the agreements was that the individual Defendants would devote their attention to Plaintiffs' businesses, rather than undermine them. Plaintiffs allege that they honored their obligations under the agreements, but that Defendants breached the agreements by forming the Prizm Entities and engaging in the actions alleged. Plaintiffs allege damages in the amount they compensated the individual Defendants after they formed the Prizm Entities.

Defendants argue that they did not breach their employment agreements because there was an agreement to transition Mint into Prizm. However, this argument is dependent on

---

[16] Fed. R. Evid. 201(b) advisory committee's note.

[17] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

6

Defendants' evidentiary submissions, which are not properly before the Court. Defendants also argue that Plaintiffs' request for damages is excessive. The appropriate amount of damages, if any, is not an issue before the Court at this time. Accepting as true Plaintiffs' allegations, as the Court must, the Complaint states a plausible claim for breach of contract.

For the first time in their Reply, Defendants argue that Plaintiffs failed to allege the second element for a breach of contract claim. Defendants also argue, again for the first time, that Plaintiffs failed to allege how reinstating Prizm Energy breached the alleged contract or covenant of good faith and fair dealing, failed to allege a preexisting contractual relationship, and failed to allege any efforts by Defendants to siphon away sales solely through the reinstatement of Prizm Energy. The Court declines to consider these arguments since they were raised for the first time in the Reply brief and Plaintiffs did not have an opportunity to respond.[18] Therefore, the Motion will be denied on this ground.

C.   BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"'An implied covenant of good faith and fair dealing inheres in every contract,' and a party breaches the covenant by intentionally injuring 'the other party's right to receive the benefits of the contract.'"[19]

Plaintiffs allege that the individual Defendants breached the implied covenant of good faith and fair dealing by forming the Prizm Entities and commencing their plan to divert Plaintiffs' business. Plaintiffs allege that the Prizm Entities ultimately received, by artifice, Plaintiffs' confidential information, customers, sales representatives, and business, resulting in damages.

---

[18] *See Pickering v. USX Corp.*, 758 F. Supp. 1460, 1461 n.2 (D. Utah 1990).

[19] *Shah v. Intermountain Healthcare, Inc.*, 314 P.3d 1079, 1087 (Utah Ct. App. 2013) (quoting *Eggett v. Wasatch Energy Corp.*, 94 P.3d 193, 197 (Utah 2004)).

Defendants again argue that no breach occurred because they were authorized to take the actions alleged. This argument too depends on the evidentiary submissions that the Court cannot consider. Based upon the allegations contained in the Complaint, the Court finds that Plaintiffs have adequately pleaded a claim for breach of the implied covenant of good faith and fair dealing.

In their Reply brief, Defendants argue that Plaintiffs fail to contend that the reinstatement of Prizm Energy did anything to destroy or injure the right to receive the benefit of the employment contracts. This argument was made for the first time in reply and will not be considered. Moreover, it misunderstands Plaintiffs' arguments. It is not merely the reinstatement of Prizm Energy that provides the basis for Plaintiffs' claims, but the actions allegedly taken by Defendants through the Prizm Entities to deprive Plaintiffs of their sales representatives, customers, and business. Therefore, Defendants' Motion will be denied on this ground.

D.  UNJUST ENRICHMENT/QUANTUM MERUIT/QUASI-CONTRACT

In order to prevail on a claim for unjust enrichment, Plaintiffs must show: (1) there was a benefit conferred on one person by another; (2) the conferee must appreciate or have knowledge of the benefit; and (3) "the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[20]

As an alternative to their contract claims, Plaintiffs allege that they conferred a benefit of at least $83,366.18 upon the individual Defendants. This represents the amount the individual Defendants were paid after the formation of the Prizm Entities. Plaintiffs allege that, under the

---

[20] *Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1984).

8

circumstances alleged here, it would be unjust for the individual Defendants to retain the benefits conferred on them.

Defendants argue that this claim should be dismissed because the time period when Plaintiffs' business was being transferred to Prizm took place over the Memorial Day weekend in 2018 and Defendants were not compensated during that time. As with Defendants' other arguments, this argument depends on the Court's consideration of evidence outside the Complaint. Moreover, this argument misrepresents Plaintiffs' claims. Plaintiffs do not limit their claims to the alleged actions taking place over the Memorial Day weekend, but rather assert that Defendants improper actions began by December 2017, when the Prizm Entities were formed.

In their Reply, Defendants make a number of new arguments as to why this claim should be dismissed. Because these arguments were raised for the first time in reply, they will not be considered. Therefore, the Motion will be denied on this ground.

E.  TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS

"In order to win a tortious interference claim under Utah law, a plaintiff must . . . prove '(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff.'"[21] The "requirement of improper means is satisfied where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules."[22] "Commonly included among improper means are violence, threats or other

---

[21] *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015) (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982)). In *Eldridge*, the Utah Supreme Court "disavow[ed] all dicta . . . that would allow liability based solely on an improper purpose." *Id.*

[22] *Leigh Furniture & Carpet Co.*, 657 P.2d at 308.

9

intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood."[23]

Plaintiffs allege that Defendants' actions interfered with their existing economic relations with Sam's Club and their potential economic relations with potential customers. Plaintiffs allege that Defendants did so using improper means, specifically the theft of Mint's confidential information and the misappropriation of its business and sales representatives. As a result of this conduct, Plaintiffs allege that they have sustained damages.

Defendants argue this claim should be dismissed because they were explicitly authorized to transition Mint into Prizm. As with all of Defendants' arguments, this argument depends on the evidentiary submissions, which are not properly before the Court. Defendants also argue that no improper means were used. However, this argument runs contrary to the allegations in Plaintiffs' Complaint. Therefore, the Court will deny the Motion on this ground.

F.  UTAH UNIFORM TRADE SECRETS ACT

"To establish a claim for misappropriation of a trade secret, the proponent of the trade secret must show '(1) the existence of a trade secret, (2) communication of the trade secret to [the defendant] under an express or implied agreement limiting disclosure of the secret, and (3) [defendant]'s use of the secret that injures [the proponent].'"[24]

Trade secret is defined as

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

---

[23] *Id.* (quoting *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1371 n.11 (Ore. 1978)).

[24] *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 323 (Utah Ct. App. 2012) (quoting *Water & Energy Sys. Tech., Inc. v. Keil*, 974 P.2d 821, 822 (Utah 1999)).

(a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[25]

Plaintiffs allege that its confidential customer information constitutes a trade secret as defined by the statute. Plaintiffs further allege that Defendants have misappropriated the confidential information by obtaining it utilizing improper means and that they have been damaged as a result.

Defendants argue that Plaintiffs have failed to allege the efforts taken to maintain the secrecy of the alleged trade secrets. This is incorrect. The Complaint alleges that Plaintiffs compile the confidential information into a format specifically crafted for Plaintiffs' purposes. Plaintiffs allege that access to the information is password protected and limited to only certain personnel.

Defendants further argue that they did not acquire any confidential information by improper means because they were authorized to obtain that information. Again, this argument is based on Defendants' evidentiary submissions.

In its Reply, Defendants argue for the first time that Plaintiffs failed to sufficiently allege that their confidential information derives independent economic value. Defendants further argue that Plaintiffs failed to allege how each Defendant was involved in the alleged misappropriation. The Court will not consider these arguments as they were raised for the first time in Defendants' Reply. Therefore, the Court must deny the Motion on this ground.

---

[25] Utah Code Ann. § 13-24-2(4).

G.  CONVERSION

"A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."[26]

Plaintiffs allege that Defendants have unlawfully converted their confidential customer information. Defendants allege that they were under the impression that they had permission to obtain this confidential information. However, this argument relies upon evidence outside the Complaint that will not be considered by the Court.

In their Reply, Defendants argue that Plaintiffs have failed to adequately state what confidential information was converted and how each individual was involved in the alleged conversion. As this argument was made for the first time in reply, it will not be considered.

Though not argued by Defendants, Plaintiffs' conversion claim may be preempted by the Utah Trade Secret Act.[27] However, because the argument has not been addressed by the parties, the Court need not make this determination at this time.

H.  LANHAM ACT

Plaintiffs' seventh cause of action is for unfair competition under the Lanham Act (Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)). Section 43 of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

---

[26] *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958).

[27] *See Mona Vie, LLC v. FVA Ventures, Inc.*, No. 2:12-CV-152 TS, 2012 WL 1952496, at *3 (D. Utah May 20, 2012).

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[28]

In order to prevail on a false advertising claim under § 43 of the Lanham Act, Plaintiff must demonstrate: "(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff."[29]

Plaintiffs allege that Defendants have attempted to pass off Plaintiffs' goods or services as Defendants' goods or services, causing a likelihood of confusion as to the source, affiliation, connection, and association of Defendants' goods or services with Plaintiffs' goods or services. Specifically, Plaintiffs allege that Defendants created a website for Prizm Energy that incorporated Mint's imagery to create the perception that Prizm Energy was related to, or an outgrowth of, Mint.

Defendants state that the Prizm Energy website does not mention Mint. This argument, however, relies on outside information. Moreover, Defendants point to no authority demonstrating that Plaintiffs' claim requires the use of the name Mint. Defendants further argue that they were explicitly authorized to transition Mint into Prizm and, therefore, could make such representations. Again, this argument relies on evidence outside the Complaint and must be rejected.

---

[28] 15 U.S.C. § 1125(a)(1).

[29] *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999) (internal citations omitted).

I.   UTAH CONSUMER SALES PRACTICES ACT

The Utah Consumer Sales Practices Act prohibits certain deceptive acts or practices "by a supplier in connection with a consumer transaction."[30] The Act provides a private right of action to a consumer when an act or practice violates the provision of the Act.[31] Though not addressed by the parties, Plaintiffs are not consumers and have not engaged in a consumer transaction with Defendants.[32] Therefore, they have no claim under the Utah Consumer Sales Practices Act and this cause of action must be dismissed.

J.   UTAH UNFAIR COMPETITION ACT

The Utah Unfair Competition Act provides a private right of action to a person injured by unfair competition.[33] Unfair competition is defined as

> an intentional business act or practice that:
> (i)(A) is unlawful, unfair, or fraudulent; and
> (B) leads to a material diminution in value of intellectual property; and
> (ii) is one of the following:
> (A) malicious cyber activity;
> (B) infringement of a patent, trademark, or trade name;
> (C) a software license violation; or
> (D) predatory hiring practices.[34]

Plaintiffs allege that Defendants engaged in intentional business acts or practices that are unlawful, unfair, or fraudulent, and which led to the diminution in value of intellectual property. Plaintiffs further allege that Defendants infringed on their trade name and engaged in predatory hiring practices.

---

[30] Utah Code Ann. § 13-11-4(1).

[31] *Id.* § 13-11-19.

[32] *See Vivint, Inc. v. England*, No. 2:12-CV-979 TS, 2013 WL 1842538, at *2 (D. Utah May 1, 2013).

[33] Utah Code Ann. § 13-5a-103(1)(a).

[34] *Id.* § 13-5a-102(4)(a).

Defendants argue that Plaintiff has not alleged any patent, trade name, or software license that was used by Prizm. However, this ignores the allegations that Prizm used Plaintiff's trade name. Moreover, Plaintiffs have clearly alleged that Defendants engaged in predatory hiring practices. Defendants further argue that there was no intent to infringe because their actions were authorized. As with Defendants' other arguments, this one must be rejected because it relies on Defendants' evidentiary submissions.

In their Reply, Defendants argue that Plaintiffs failed to allege facts to establish the intellectual property at issue and the alleged predatory hiring practices. Defendants further argue that Plaintiffs failed to allege how each Defendant was involved in the alleged violation. The Court will not consider these arguments because they were not raised in the initial Motion. Therefore, the Court will deny the Motion on this ground.

H.   CIVIL CONSPIRACY

In order to plead a claim for civil conspiracy, a complaint must allege sufficient facts to establish (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.[35]

Plaintiffs allege that Defendants combined to accomplish the misappropriation and theft of Plaintiffs' confidential information along with Plaintiffs' sales representatives and businesses. Plaintiffs allege that Defendants committed numerous unlawful, overt acts to further that objective, including misrepresenting Mint's compensation and authority to sell in Sam's Club

---

[35] *Harvey v. Ute Indian Tribe of Uintah & Ouray Reservation*, 416 P.3d 401, 425 (Utah 2017).

locations, misappropriating confidential information, and diverting business to the Prizm Entities. As a result, Plaintiffs allegedly suffered damages.

Defendants again argue that there was no conspiracy because their actions were specifically authorized. For the reasons already stated, the Court must reject this argument. Defendants also argue that Plaintiffs' conspiracy claim "lacks logic and reasonableness."[36] However, a complaint may proceed even if the proof of the facts alleged is improbable.[37]

In their Reply, Defendants argue that Plaintiffs' allegations fail to describe how all the Defendants worked together and that there were no facts alleged to support the claim that the individual Defendants worked together to steal Mint's business. The Court declines to consider arguments made for the first time in reply.

### III. CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 16) is GRANTED IN PART AND DENIED IN PART. The Court dismisses Plaintiffs' eighth cause of action. All other causes of action remain.

DATED this 13th day of November, 2018.

BY THE COURT:

Ted Stewart
United States District Judge

---

[36] Docket No. 16, at 37.

[37] *Twombly*, 550 U.S. at 557.

16